## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| **CLAUDETTE HAWKINS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.: 7:10-CV-19-O** |
| | § | **ECF** |
| **MONTAGUE COUNTY, TEXAS,** | § | |
| **HARRY BITTLINGER,** | § | |
| **DELBERT McCAIG, D.O.,** | § | |
| **SHIRIRANG NEURGAONKAR, M.D.,** | § | |
| **and MARK WILLIAM SCHNEIDER,** | § | |
| **M.D.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following:

1. Defendants Montague County and Harry Bittlinger's Motion to Dismiss for Failure to State Claim under Rule 12(b)(6) (ECF No. 14) and Brief in Support (ECF No. 15) filed April 19, 2010;

2. Plaintiff Hawkins' Response (ECF No. 23) and Brief in Support (ECF No. 24) filed May 20, 2010;

3. Defendants Montague County and Harry Bittlinger's Reply (ECF No. 31) filed June 14, 2010;

4. Defendant McCaig's Motion to Dismiss Under Rule 12(b)(6) (ECF No. 33) and Brief in Support (ECF No. 34) filed June 21, 2010;

5. Plaintiff Hawkins' Response to Defendant McCaig's Motion to Dismiss (ECF No. 43) and Brief in Support (ECF No. 44) filed July 12, 2010;

6. Defendant Schneider's Motion to Dismiss (ECF No. 47) and Brief in Support (ECF No.

48) filed September 10, 2010;

7.  Defendant  Neurgaonkar's Motion to Dismiss (ECF No. 49) and Brief in Support (ECF No. 50) filed September 10, 2010;

8.  Plaintiff Hawkins' Response to Defendant Schneider's Motion to Dismiss (ECF No. 51) and Brief in Support (ECF No. 52) filed September 19, 2010; and

9.  Plaintiff Hawkins' Response to Defendant Neurgaonkar's Motion to Dismiss (ECF No. 53) and Brief in Support (ECF No. 54) filed September 19, 2010.

Having considered the pleadings, motions, responses, and reply thereto and applicable law, and for the reasons set forth below, the Court finds that Defendant Montague County and Defendant Bittlinger's Motion to Dismiss should be and is hereby **GRANTED in part** and **DENIED in part**; Defendant McCaig's Motion to Dismiss should be and is hereby **DENIED**; Defendant Schneider's Motion to Dismiss should be and is hereby **DENIED**; and Defendant Neurgaonkar's Motion to Dismiss should be and is hereby **DENIED**.

I.      Factual & Procedural Background[1]

Plaintiff Claudette Hawkins ("Hawkins") is the sister of Tillman Barber ("Barber"), a pretrial detainee who died at age 53 while being held at the Montague County Jail ("MCJ").  Barber was arrested on January 30, 2008 and held at MCJ for slightly less than four months awaiting trial until his release on May 24, 2008.  The facts giving rise to this suit occurred in March of 2008 when Barber became ill with metastatic lung cancer.  Hawkins does not allege that Barber suffered from any discernible medical condition or illness when booked into MCJ, nor that he notified any jail

---

[1] The Court takes its factual account from Plaintiff's Second Amended Complaint (ECF No. 42), the live pleading before the Court.  *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)(stating that in deciding a motion to dismiss, all well-pleaded factual allegations are taken as true).

official that he was ill, suffered from a medical condition, or was taking any medications. Rather, Hawkins alleges that Barber began experiencing symptoms of his condition around March 13, 2008, when Barber submitted his first request for medical treatment known as a "kite."[2] In this request, Barber sought medical care for "knots on his neck, recurring headaches, and difficulty sleeping." Barber did not receive a response to this request for medical treatment.

Five days later, Barber submitted a second kite asking why he had not been allowed to see the doctor when he submitted the March 13, 2008 request. Defendant Harry Bittlinger ("Bittlinger"), the Jail Administrator, responded to Barber's request, writing: "[t]he doctor decided not to see you yesterday based upon information provided in your kite." Two weeks later, Barber submitted a third kite requesting to see the doctor. Bittlinger again responded in writing stating: "Saw kite but 1st kite turned in to see Dr. dated 3-27-08 put in Dr. box." Barber then submitted a fourth request for medical care. On April 1, 2008, nearly three weeks after his first request for medical treatment, Barber was seen by the jail doctor, Defendant Delbert McCaig , D.O. ("McCaig" or "Dr. McCaig"). At this visit, Dr. McCaig performed an examination and prescribed Barber Doxycycline, an antibiotic, for seven days.

On April 21, 2008, Barber submitted a kite reporting "chest pains to the extent he could hardly breathe," as well as "a lump on his throat and severe migraine headaches." The next day, Dr. McCaig saw Barber for a second time. At this visit, Dr. McCaig performed another examination and concluded that Barber suffered from sinusitis. Dr. McCaig prescribed a second round of Doxycycline and Norel, a decongestant and antihistamine.

---

[2]A "kite" is a written communication form used within the MCJ. Inmates fill it out to make requests to jail officials, such as requesting a doctor visit, a dental visit, legal materials, materials for requesting a court-appointed attorney, or making any other such requests.

Four days later, on April 25, 2008, Barber submitted a kite complaining that the jail staff was not providing him with his medications. Bittlinger responded in writing to this request: "will check out." Hawkins alleges that, at this point, Barber had been vomiting for at least four days, had shortness of breath, chest pain, and continual coughing. On April 27, 2008, Barber was taken to the emergency room at Bowie Memorial Hospital. Defendant Shrirang Neurgaonkar, M.D. ("Dr. Neurgaonkar") treated Barber and ordered a chest x-ray, which showed no abnormalities. Barber was discharged the same day and returned to his jail cell.

Two days later, on April 29, 2008, Barber was seen by Dr. McCaig for a third time. At this point, Hawkins alleges that Barber was unable to walk, was still vomiting, and was seen in a wheelchair. Dr. McCaig did not prescribe any medication at this visit. Hawkins alleges that within a couple of days following the April 29 visit, Barber's condition declined to the point where he lost control of his bodily functions and eventually lost the ability to move or communicate. Hawkins further alleges that other inmates had to care for and clean Barber during the following month at MCJ.

On May 10, 2008, Barber[3] submitted a kite reading: "[n]eeds to see Doc on Tuesday Needs special diet can't hold solids down." In response to this kite, Dr. McCaig directed Bittlinger to have Barber weighed daily and to notify him if Barber lost more than two pounds. On May 13, 2008, Barber was seen by Dr. McCaig for the fourth time. During this visit, Barber was non-communicative and the only words medical staff were able to get out of him were "cold" and "chills." Dr. McCaig noted that Barber was "disoriented and could not concentrate or follow directions." Dr. McCaig also noted that Barber had been in that condition two-weeks prior, and

---

[3] It is unclear whether Barber or someone else submitted this kite on Barber's behalf.

wrote: "[w]e were concerned about him being anemic and that he is malingering."

On May 14, 2008, Barber's weight dropped to 139.4 pounds.[4]  The following day, Dr. McCaig was contacted at his home by jailer Darlene Walker and, after speaking with her, Dr. McCaig "agreed that [Barber] needed hospitalization."  At some point during the next few hours, Defendant Bittlinger took Barber to the hospital.  At this visit, Barber was treated again by Dr. Neurgaonkar, as well as by Defendant Mark William Schneider, M.D. ("Dr. Schneider").  Another chest x-ray was performed which showed increased soft tissue density in the right para-trachial region of Barber's lungs.  Tests were ordered to confirm the diagnosis of metastatic lung cancer. Barber was discharged from the hospital that same day and returned to his cell.

The next day, Friday, May 16, 2008, Dr. McCaig saw Barber for a fifth time.  At this visit, Dr. McCaig noted Barber again as non-communicative and showing a marked decline in mental status and ability to follow directions.  Dr. McCaig also noted the radiologist's findings of a tumor in the right upper quadrant of Barber's lungs that crossed the midline.  Dr. McCaig reported the possibility of getting a "CT" of the brain or an "MRI."  Dr. McCaig wrote: "there is a great deal of concern that this is a cancer that [is] growing rapidly as we note the change."  Dr. McCaig informed Defendant Bittlinger, by telephone, at 7:20 p.m. that day with the findings of the CT scan and labs, along with the belief that the cancer was growing rapidly.  Dr. McCaig documented that he would discuss Barber's condition further with Sheriff Bill Keating, Defendant Bittlinger, and the Montague County Judge on Monday, May 19, 2008.

On May 19, 2008, Dr. McCaig wrote Bittlinger a letter informing him that additional procedures were medically necessary for Barber, including a biopsy, a head CT scan, and removal

---

[4] Hawkins alleges that Barber weighed 160 pounds when he entered the jail on January 30, 2008.

of gallstones.  Jail officials then asked the District Attorney to obtain a personal recognizance bond

for Barber.  On May 21, 2008, Montague County District Judge Roger Towery granted Barber a

personal recognizance bond in the amount of $5,000.  Four days later, on May 24, 2008, Barber was

released from MCJ into the custody of a Tarrant County transport officer.  The transport officer took

Barber to John Peter Smith Hospital where he died that night.

Hawkins filed this suit on February 9, 2010 bringing claims against Montague County and

Jail Administrator Bittlinger arising out of the events surrounding Barber's death.  Hawkins asserts

claims under 42 U.S.C. § 1983 ("Section 1983") for violation of Barber's First, Sixth, and Fourteenth

Amendment rights and  state-law claims under Chapter 121 of the Texas Human Resources Code.

Pl. Compl., ECF No. 1.  Hawkins filed an amended complaint on May 15, 2010 to add claims

against Dr. McCaig under Section 1983 for violation of Barber's Fourteenth Amendment rights and

state-law health care liability claims.  Pl. Am. Compl., ECF No. 20.  Hawkins filed a second

amended complaint on July 11, 2010  joining Defendants Dr. Neurgaonkar and Dr. Schneider with

state-law health care liability claims arising from Barber's treatment during his two hospital visits.

Pl. 2nd Am. Compl., ECF No. 42.

Defendants Montague County and Bittlinger filed a Joint Motion to Dismiss under Rule

12(b)(6), arguing that Hawkins failed to state a claim under Section 1983 for inadequate medical

care, denial of access to legal materials, and denial of counsel.  *See* Defs.' Mot., ECF No. 14; Defs.'

Mem., ECF No. 15.  Defendant Dr. McCaig filed a Motion to Dismiss under Rule 12(b)(6), arguing

that Hawkins failed to state a claim for inadequate medical care and for cruel and unusual

punishment.  *See* Def. McCaig Mot., ECF No. 33; Def. McCaig Br., ECF No. 34.  Defendants Dr.

Schneider and Dr. Neurgaonkar each filed essentially identical motions to dismiss under Rule

12(b)(6), arguing that Hawkins failed to allege a state-law health care liability claim against either of them based on Hawkins' alleged standard of care. *See* Defs.' Mots., ECF No. 47, 49; Defs.' Brs., ECF No. 48, 50. Hawkins filed responses to each of Defendants' motions to dismiss. Defendants Montague County and Bittlinger filed a reply. Defs.' Reply, ECF No. 31. Accordingly, the motions are ripe for determination.

## II.    Legal Standards

### A.    Rule 12(b)(6)

To defeat a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 129 S.Ct. at 1949-50.

7

In ruling on a motion to dismiss under Rule 12(b)(6), the Court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Id.*

### B.    Rule 12(f)

Rule 12(f) states that "[u]pon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules . . . upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." FED. R. CIV. P. 12(f). The motion to strike should be granted when the allegations to be stricken have no possible relation to the controversy. *Augustus v. Bd. of Pub. Instruction of Escambia Co.*, 306 F.2d 862, 868 (5th Cir. 1962) (citations omitted); *see also FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993). Accordingly, such a motion should only be granted when "the allegations are prejudicial to the defendant or immaterial to the lawsuit." *Johnson v. Harvey*, No. 96-3438, 1998 U.S. Dist. LEXIS 14203, 1998 WL 596745, at *7 (E.D. La. Sept. 8, 1998) (citations omitted). The movant establishes immateriality by showing that the challenged allegations can have no possible bearing upon the subject matter of the litigation. *Bryant v. Lubbock Indep. Sch. Dist.*, No. 5:04-CV-83-C, 2004 U.S. Dist. LEXIS 7184, at *8-9 (N.D. Tex. Apr. 26, 2004).

### C.    Section 1983

Section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of

rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). To state a claim under Section 1983, a plaintiff must demonstrate: (1) a violation of the United States Constitution or federal law; and (2) that the violation was committed by someone acting under color of state law. *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Wright v. Collins*, 766 F.2d 841, 849 (5th Cir. 1985).

Municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A municipality cannot be held liable under Section 1983 on the basis of *respondeat superior. Bd. of County Commissioners of Bryan Count, Okl. v. Brown*, 520 U.S. 397, 415-16, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court clearly emphasizes the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or those edicts or acts may fairly be said to represent official policy, inflicts the injury

that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; she must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *see Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit notes the "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (stating these two requirements "must not be diluted").

## III. Preliminary Matter: Motions to Strike

Defendants Montague County, Bittlinger, and Dr. McCaig ("Defendants") move to strike portions of Hawkins' 149-page complaint.[5] Defendants ask the Court to strike or disregard the

---

[5] Specifically, Defendants Montague County and Bittlinger move to strike portions of Hawkins' Complaint (ECF No. 1) filed on February 9, 2010. *See* Defs.' Mem., ECF No. 15. Hawkins subsequently filed a First Amended Complaint (ECF No. 20), which included the portions objected to by Defendants from the original complaint. Defendant McCaig moves to strike the same portions of Hawkins' First Amended Complaint as Defendants Montague County and Bittlinger. *See* Def. McCaig Br., ECF No. 34. Hawkins then

portions of the complaint alleging sexual misconduct at MCJ, staph infections, spider bites, and the level of dental care provided at the facility. Defendants argue that these allegations are "impertinent and immaterial and have no bearing on the Plaintiff's claims in this case." Defs.' Mem., ECF No. 15 at 5. Hawkins objects to Defendants' motions to strike arguing that: A) there is no motion to strike under Rule 12(f) properly before the Court; B) Defendants failed to join all of the defensive issues in a single motion as required by Rule 12(g)(2), thus waiving the right to move to strike; C) the time period for Defendants to file a motion to strike under Rule 12(f) has passed; D) Defendants failed to comply with the requirements of Rule 7(b) in failing to specifically identify the paragraphs of the complaint that Defendants seek to have stricken; and E) the pleadings referenced are material to issues in this case. Pl. Resp. Br., ECF No. 24 at 20; Pl. Resp. Br., ECF No. 44 at 4.

The Court finds Defendants properly raised a Rule 12(f) motion to strike. Defendants Montague County and Bittlinger raised the motion in their Memorandum of Points and Authorities in Support of Defendants' Motion under Rule 12(b)(6). *See* Defs.' Mem., ECF No. 15. Hawkins cites no authority showing that Defendants waived the right by raising the motion in their supporting memorandum/brief rather than in the actual Rule 12(b)(6) Motion. Defendant McCaig also raised the motion in his first responsive pleading. *See* Def. McCaig Br., ECF No. 34. Defendants sufficiently identify the sections they seek to be stricken. Therefore, the Court finds a Rule 12(f) motion to strike is properly before the Court.

The motion to strike should be granted when the allegations have no possible relation to the controversy; that is, when the allegations are prejudicial to the defendant or immaterial to the

---

filed a Second Amended Complaint, but again included all of the portions objected to by Defendants from the previous two complaints. Because the live pleading before the Court, Hawkins' Second Amended Complaint (ECF No. 42), contains all of the portions objected to by Defendants from the previous complaints, the Court construes Defendants' motions to strike as objections to the Second Amended Complaint.

lawsuit. *Bryant*, 2004 WL 884471 at *3. It is clear from Hawkins' complaint that the alleged sexual misconduct, staph infections, spider bites, and level of dental care at MCJ have no relation to any constitutional or state-law violations regarding Barber. Hawkins argues that these allegations are material and necessary for pursuing a "conditions of confinement" claim to show a pervasive pattern of serious deficiencies in providing for the basic human needs of inmates. Hawkins further argues that these allegations relate to various policies and customs allegedly observed in the MCJ and serve to establish the "conditions of Mr. Barber's confinement." But these particular conditions have no relation to any constitutional violations involving Barber. Hawkins does not allege any policies involving sex, drugs, staph infections, spider bites, or dental care that could have been the moving force of any constitutional violations related to Barber.

Therefore, because the portions of the complaint alleging sexual misconduct, staph infections, spider bites, and the level of dental care provided at MCJ have no relation to Barber's conditions of confinement claims, the Court finds these allegations as immaterial to the lawsuit. Even if the Court were to consider these portions of the complaint, the opinions contained herein would remain unchanged.

Accordingly, Defendants' Motions to Strike are **GRANTED.**

IV.  Analysis

    A.  **Hawkins' Claims under § 1983**

        1.  Fourteenth Amendment Claims

Hawkins brings claims against Defendants Montague County, Bittlinger, and Dr. McCaig asserting that Barber received inadequate medical care and was subjected to conditions that constituted "punishment" in violation of Barber's Fourteenth Amendment rights. Defendants move to dismiss these claims on the basis that Barber received constitutionally adequate medical attention

and treatment in accordance with the Fourteenth Amendment, and has therefore failed to state a claim for which relief may be granted.

Constitutional challenges by pretrial detainees for inadequate medical care may be brought under two alternative theories: as an attack on the "conditions of confinement" or as an "episodic act or omission." *Shepard v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009); *Hare v. City of Corinth*, 74 F.3d 633, 644-45 (5th Cir. 1996) (en banc). A "conditions of confinement" case is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare,* 74 F.3d at 644; *Flores v. Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997). In order to establish a "conditions of confinement" case based on inadequate medical care, a plaintiff must show that the level of medical care provided to the detainee was not reasonably related to a legitimate governmental objective and therefore constituted punishment in violation of the Fourteenth Amendment. *Shepard,* 591 F.3d at 455 n.3; *Bell v. Wolfish*, 441 U.S. 520, 539, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979). If the plaintiff properly states a claim as an attack on conditions of confinement, he is relieved from the burden of demonstrating a municipal entity's or individual jail official's actual intent to punish because intent may be inferred from the decision to expose a detainee to an unconstitutional condition. *Shepard,* 591 F.3d at 452. A condition is usually the manifestation of an explicit policy or restriction, e.g. the number of bunks per cell, mail privileges, or disciplinary segregation. *Id; see Scott v. Moore*, 114 F.3d 51, 53 n.2 (5th Cir. 1997) (en banc) (listing cases deemed to state challenges to conditions of confinement).

In some cases, a condition may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions "sufficiently extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice." *Hare*, 74 F.3d at 645. "Proving a pattern is a heavy burden, one that has rarely been met in our caselaw." *Shepard*, 591 F.3d at 452. Further, to

constitute impermissible punishment, the condition must be one that is "arbitrary or purposeless" or, put differently, "not reasonably related to a legitimate goal." *Id; see also Bell,* 441 U.S. at 539. "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare*, 74 F.3d at 646.

Alternatively, if the alleged harm is a particular act or omission by one or more officials, the action is properly characterized as an "episodic act or omission" case. In an episodic act or omission case, "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission." *Scott*, 114 F.3d at 53. In order to state an "episodic act or omission" claim, a pretrial detainee must show that an official acted with subjective deliberate indifference to the detainee's serious medical needs. *Hare*, 74 F.3d at 648. Because the focus of the claim is on an individual's misconduct, the detainee is required to prove intent-specifically, that one or more jail officials "acted or failed to act with deliberate indifference to the detainee's needs." *Id.*

To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). The Fifth Circuit holds that "deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A prison official acts with deliberate indifference only if the official (A) knows that the inmate faces a substantial risk of serious bodily harm and (B) disregards that risk by failing to take reasonable measures to abate it. *Gobert*, 463 F.3d at 346 (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Mere negligence will not suffice, and deliberate indifference cannot be inferred from a failure to act

14

reasonably. *See Hare*, 74 F.3d at 649-50. Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. *Id*; *Gobert*, 463 F.3d at 347; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). Deliberate indifference requires a showing that officials refused to treat the detainee, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs. *Domino*, 239 F.3d at 756.

Hawkins alleges a Fourteenth Amendment violation under both an "episodic act or omission" claim (based on Defendant Bittlinger and Defendant Dr. McCaig's acts or omissions) and a "conditions of confinement" claim (based on Montague County's policies, customs, and practices). Defendants Montague County and Bittlinger argue that Hawkins has failed to state a claim for inadequate medical care under either the "conditions of confinement" standard or "episodic acts or omissions" standard because the complaint demonstrates that the level of care provided to Barber while at MCJ was adequate in that it did not cause his death or result in a serious deprivation of Barber's basic human needs. Defs.' Reply, ECF No. 31. Defendants also argue that unsuccessful medical treatment or claims of negligence do not give rise to a § 1983 claim. *Id.* The Court turns first to Hawkins' "conditions of confinement" claim.

a. "Conditions of Confinement" Claim

Hawkins alleges that Montague County, and its officials, Defendant Bittlinger and Sheriff Keating, "employed and allowed policies, customs, and practices" that "were moving forces in the deprivation of [Barber's] respective rights including his right to reasonable, adequate, and timely medical care under the Fourteenth Amendment as a pretrial detainee" and right "not to be punished under the Fourteenth Amendment." Pl. 2nd Am. Compl. ¶¶ 406, 409. Some of the policies,

15

customs, and practices alleged by Hawkins include: A) regularly denying, delaying, or interfering with inmate requests for medical care; B) permitting Defendant Bittlinger to review inmate medical requests and decide whether and when an inmate would be permitted to receive medical treatment; C) prohibiting jailers from obtaining emergency medical care for an inmate, without first contacting the jail administrator and obtaining his approval; D) denying virtually all requests by jailers to summon emergency or other medical care for inmates; E) limiting the number of days that a doctor is available to examine and treat inmates to one day a week, typically on Tuesdays; F) limiting the types of medications inmates could receive to treat their medical conditions; G) refusing to deliver an inmate's medication, refusing to allow a cellmate to hand medications to that inmate, and refusing to take any other steps to get an inmate his medications; H) refusing to move seriously ill patients to a hospital or other location where they can receive nursing care; and I) taking steps to avoid having to pay for inmate medical care, by denying or delaying treatment or by transferring them to another facility. *Id.* at ¶ 400.

Hawkins attacks the Jail's medical care system itself, in addition to the acts and omissions of individual actors. Defendants fail to adequately address Hawkins' "conditions of confinement" claim, instead focusing on whether Barber received constitutionally adequate medical care under either standard. *See* Def.'s Mem., ECF No. 15 at 7-10 (arguing that under either a "conditions of confinement" or "episodic acts or omissions" analysis, Barber did not receive constitutionally inadequate medical care); *see* Def. McCaig Br., ECF No. 34 at 9-13 (arguing Barber received constitutionally adequate medical care). Therefore, the Court finds Hawkins sufficiently states a conditions of confinement claim based on the alleged policies and customs at MCJ regarding medical care. *See Palo v. Dallas Co.*, No. 3:05-cv-0527-D, 2007 U.S. Dist. LEXIS 54274, at *9 (N.D. Tex. July 26, 2007) (denying Defendant Dallas County's motion to dismiss the conditions of

confinement claim for inadequate medical care due to the County's failure to adequately address the claim in their motion).

Accordingly, the Court denies Defendants Montague County, Bittlinger, and Dr. McCaig's motions to dismiss to the extent they seek dismissal of Hawkins' conditions of confinement claim for inadequate medical care.

### b. "Acts or Omissions" Claim

A plaintiff must assert more than just inadequate or negligent medical treatment in order to establish a valid § 1983 claim. *Graves v. Hampton*, 1 F.3d 315, 319 (5th Cir. 1993); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Hawkins must allege facts sufficient to support a conclusion of deliberate indifference and substantial harm. *Estelle v. Gamble*, 429 U.S. at 104; *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Although Defendants maintain that Hawkins "appears to be attempting to plead a § 1983 claim under the guise of a medical malpractice or negligence complaint," the following analysis shows that Hawkins has alleged the required elements of an "episodic acts or omissions" claim against Defendants Montague County, Dr. McCaig, and Bittlinger.

### i. Claims Against Dr. McCaig

Dr. McCaig moves for dismissal on the grounds that Barber received constitutionally adequate medical care. Def. McCaig Br., ECF No. 34 at 9-13. In *Hare*, the court held that an episodic act or omission of a state jail official does not violate a pretrial detainee's constitutional right to be secure in his basic human needs, such as medical care and safety, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs. *Hare*, 74 F.3d at 647-648. In order to establish that Defendant Dr. McCaig violated that right, then, Hawkins must allege that Dr. McCaig acted with subjective deliberate indifference to

17

Barber's condition. *Id.* at 647-49. This means that Hawkins must assert that Dr. McCaig had "subjective knowledge of a substantial risk of serious medical harm," yet acted with deliberate indifference to that risk. *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996) (citing *Hare*, 74 F.3d at 650).

Hawkins alleges that on or about May 16, 2008, Dr. McCaig gained actual subjective knowledge that Barber suffered from lung cancer or lymphoma. Pl. 2nd Am. Compl. at ¶ 469. Hawkins further alleges that on May 16, 2008, Dr. McCaig "permitted [Barber] to be taken back to his cell in the general population where he would lay and vomit, urinate, and defecate on himself for the next eight days until Tarrant County arrived to pick him up," and that Dr. McCaig provided him no further medical treatment or pain medication. *Id.* at ¶ 480. Hawkins alleges that on or before May 19, 2008, Dr. McCaig "had actual subjective awareness that [Barber] was no longer ambulatory, was noncommunicative, was suffering probable metastatic lung cancer that had likely spread to his brain, that had likely spread to his right lung, and that had likely spread to an area between his liver and diaphragm, was suffering from one or more gallstones, was having difficulty eating, was frequently vomiting, had lost bowel control, and had lost bladder control." *Id.* at ¶ 474. Hawkins alleges that during the time period between May 16 and May 19, 2008, Dr. McCaig did not have any further contact with Barber, did not prescribe him any pain medications, and acted with deliberate indifference by failing to provide him with any treatment after May 16, 2008. *Id.* at ¶ 485.

Taking these factual allegations as true, the Court can infer that Dr. McCaig, a doctor of medicine, had subjective knowledge of the possibility of serious dangers in failing to provide any further medical treatment or pain medication to Barber after learning of his diagnosis on May 16,

2008.  Consequently, the Court finds Hawkins has stated a valid § 1983 claim against Dr. McCaig.[6]

Accordingly, Defendant Dr. McCaig's motion to dismiss the Fourteenth Amendment claim for inadequate medical care is **DENIED.**

### ii.  Claims Against Harry Bittlinger

Hawkins asserts claims against Defendant Bittlinger in his official and individual capacity. Official capacity suits are another way of pleading an action against an entity of which an officer is an agent. *Kentucky*, 473 U.S. at 165.  The Fifth Circuit has noted that a district court correctly dismisses allegations against municipal officers in their official capacities when the respective governmental entity is defending in the suit, as the official capacity allegations duplicate claims against the governmental entity.  *Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (affirming district court's dismissal under Rule 12(b)(6) of official capacity claims against municipal officers as duplicative of the claims against the governmental entities).

Because the relevant governmental entity, Montague County, received notice and an opportunity to respond, the Court finds it appropriate to dismiss *sua sponte* Hawkins' official capacity claims against Defendant Bittlinger as duplicative of the claims against Montague County. *See, e.g., Palo ex rel. Estate of Palo v. Dallas County*, No. 3:05-cv-0527-D, 2006 U.S. Dist. LEXIS 90665, 2006 WL 3702655, at *8 (N.D. Tex. Dec. 15, 2006) (Fitzwater, J.) (dismissing § 1983 claims against sheriff sued in his official capacity as duplicative of claims against the county); *Lee v. Valdez*, No. 3:07-cv-1298-D, 2009 U.S. Dist. LEXIS 43381, at *6 (N.D. Tex. May 20, 2009) (Fitzwater, J.) (dismissing § 1983 claims against sheriff as duplicative of claims against the county);

---

[6] Hawkins does not specify whether her claims against Dr. McCaig are in his official or individual capacity.  To the extent Hawkins' claims against Dr. McCaig are in his official capacity, they are all interpreted as claims against the county.  *See Kentucky*, 473 U.S. at 159.

*Green v. City of Irving, Tex.*, 3:09-cv-79-D, 2009 U.S. Dist. LEXIS 24383, 2009 WL 762202, at *1 (N.D. Tex. Mar. 24, 2009) (Fitzwater, J.) (dismissing § 1983 claim against police chief sued in his official capacity where plaintiffs also sued city).

But the Court finds Hawkins has alleged facts sufficient to avoid dismissal of her § 1983 claim under the Fourteenth Amendment against Bittlinger in his individual capacity. Hawkins alleges Bittlinger intercepted the kites Barber was sending to other authorities in the jail in an effort to receive medical treatment. Pl. 2nd Am. Compl. ¶ 351. Hawkins further alleges that between May 19, 2008, when Bittlinger learned of Barber's serious medical condition, and May 24, 2008, Barber's release to Tarrant County, Bittlinger failed to provide Barber with any medical treatment despite knowing of his serious medical condition. *Id.* at ¶ 378. Taking these factual allegations as true, the Court finds Hawkins has stated a claim under the Fourteenth Amendment against Defendant Bittlinger in his individual capacity.[7]

### iii. Claims Against Montague County

Hawkins asserts claims against Montague County based on the acts and omissions of Sheriff Keating and Defendant Bittlinger, whom Hawkins alleges were final policymakers for the County. Pl. 2nd Am. Compl. ¶ 2. Hawkins claims Defendant Bittlinger is liable in his official capacity as a representative of Montague County because he implemented policies, discussed *supra* Section IV.A.1.a., which prevented Barber and other inmates from receiving adequate medical treatment. An alleged policy implemented by Bittlinger included a standing order that no jailer could contact EMS or summon medical care without first contacting Defendant Bittlinger to obtain his approval. Pl. Resp., ECF No. 24 at 12. A reasonable policymaker arguably would know that this could result

---

[7] The Court notes that neither Defendant Dr. McCaig nor Defendant Bittlinger have moved for dismissal based on qualified immunity.

in a risk of serious medical harm to the physical welfare of individual detainees. Hawkins therefore has alleged sufficient facts to state a § 1983 claim based upon the County's objective deliberate indifference to Barber's constitutional right to adequate medical care. Therefore, Hawkins has stated a viable § 1983 claim against Montague County.

Accordingly, Defendants Montague County and Bittlinger's Motion to Dismiss Hawkins' claims for inadequate medical care under the Fourteenth Amendment is **DENIED.**

### 2.     Sixth Amendment Claim

Defendants Montague County and Bittlinger also move to dismiss Hawkins' § 1983 claim for violation of Barber's Sixth Amendment right to counsel.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend VI; *Rothgery v. Gillespie County*, 554 U.S. 191, 128 S.Ct. 2578, 2583, 171 L.Ed.2d 366 (2008). The Sixth Amendment right to counsel attaches at "the initiation of adversary judicial criminal proceedings, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Rothgery*, 554 U.S. at 2583. The Sixth Amendment only applies to a defendant's trial and first appeal as of right, not to civil proceedings such as civil rights claims challenging prison conditions. *See Pennsylvania v. Finley*, 481 U.S. 551, 555-57, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (no right to counsel except in criminal prosecution and appeal).

Hawkins alleges a violation of Barber's Sixth Amendment right to counsel based on the delay in receiving court-appointed counsel. Pl. Resp., ECF No. 24 at 18. Hawkins further alleges that Barber's Sixth Amendment right to counsel was violated because he was deprived of "utilizing court-appointed counsel to take action on his behalf to compel Montague County and its officials to provide him the medical care he needed." Pl. 2nd Am. Compl. ¶¶ 411, 432.

In *Rothgery*, the Supreme Court declined to rule on whether a six-month delay in receiving court-appointed counsel constitutes a Sixth Amendment violation. 554 U.S. at 2592. The complaint in this case establishes that Barber received court-appointed counsel for his criminal case after his arraignment on April 16, 2008. Pl. 2nd Am. Compl. at ¶¶ 388-89. Barber's right to counsel did not attach until after his arraignment on February 15, 2008. *See Rothgery*, 554 U.S. at 2583. The Court finds that the approximate two-month delay in receiving court-appointed counsel fails to rise to the level of a constitutional violation based on the Sixth Amendment.

The alleged deprivation of utilizing court-appointed counsel to take civil action on Barber's behalf also fails to state a claim under the Sixth Amendment. While inmates have a clearly established right under the First Amendment to access courts to institute civil rights actions challenging the conditions of their confinement, *see Hooten v. Jenne*, 786 F.2d 692, 696 (5th Cir. 1986), a civil rights complainant has no right to the automatic appointment of counsel to institute civil rights actions. *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982). The mandatory requirement of counsel under the Sixth Amendment only concerns defendants in criminal proceedings. *See Garcia v. Ray*, 556 S.W.2d 870, 873 (Tex. App.–Corpus Christi 1977, writ dism'd) ("the mandatory requirement of counsel under the 6th Amendment concern[s] only defendants in criminal proceedings and has no reference to plaintiffs in civil actions bent on the procurement of a judgment for the payment of money in the way of damages as against some other person") (*citing, with approval*, *Rhodes v. Houston*, 258 F.Supp. 546 (D. Neb. 1966)). Barber was not entitled under the Sixth Amendment to utilize court-appointed counsel to pursue claims regarding the conditions of his confinement.

Accordingly, Defendants Montague County and Bittlinger's Motion to Dismiss with respect to Hawkins' § 1983 claim based on violations of the Sixth Amendment should be and is

hereby **GRANTED.**

   3. First Amendment Claim

Defendants Montague County and Bittlinger move to dismiss Hawkins' claim for violation of Barber's First Amendment right to access the courts.

Prisoners, including pretrial detainees, have a constitutional right of adequate and meaningful access to the courts. *See, e.g., Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); *Bounds v. Smith*, 430 U.S. 817, 821-23, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1976); *McDonald v. Stewart*, 132 F.3d 225, 230 (5th Cir. 1998). The right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds,* 430 U.S. at 828. Meaningful access is insured through adequate law libraries or adequate assistance from persons trained in the law." *Bounds,* 430 U.S. at 830; *Lewis*, 518 U.S. at 351 ("prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts"(internal quotations omitted)); *Johnson v. Avery*, 393 U.S. 483, 490, 89 S.Ct.747, 21 L.Ed.2d 718 (1969). But the right to access is not unlimited. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). The right encompasses only a "reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Johnson v. Rodriquez*, 110 F.3d 299, 310-311 (5th Cir. 1997) (quoting *Lewis*, 518 U.S. at 356).

In order to establish a claim for denial of access to the courts, a plaintiff must demonstrate "actual injury." *See Lewis*, 518 U.S. at 351-52 (holding that actual injury is a constitutional prerequisite to maintaining a claim involving denial of access to the courts). The inmate shows

"actual injury" by establishing that he lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *See id; Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996); *McDonald,* 132 F.3d at 231 (holding that inmate must establish that his "position as a litigant was prejudiced by his denial of access to the courts."). The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353. Rather, plaintiff must demonstrate that the lack of access prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks "to vindicate basic constitutional rights" in a civil rights action. *Id.* at 353-54.

Hawkins alleges that "Defendant Bittlinger twice refused [Barber's] requests that he be afforded access to a law library and legal materials." Pl. 2nd Am. Compl. ¶ 431. Hawkins further alleges that Defendant Bittlinger failed to deliver Barber's request for a court-appointed attorney to the appropriate official or see that it was promptly brought to the attention of the official for timely action. *Id.* As harm, Hawkins alleges that Barber's denial of the right to access a law library and access legal materials effectively prevented him from conducting legal research to determine the steps he could take to obtain medical care and obtain court-appointed counsel to protect his right to adequate medical care. *Id.* at ¶¶ 412, 433.

Hawkins' complaint fails to show that Barber suffered prejudice or "actual injury" as a litigant as a result of Defendant Bittlinger's alleged actions in denying him access to legal materials or a law library. The facts do not allege that Barber was prevented from filing a case, or that Defendant Bittlinger's actions caused him to lose a pending case that attacked either his conviction or conditions of confinement. *See Lewis*, 518 U.S. at 354. Access to legal materials is one way of satisfying the right of access to the courts. *Bounds*, 430 U.S. at 830. But there is no right to access legal materials or a law library independent of the right to access the courts. Thus, a complaint of

no access to a law library, without more, is insufficient to state a claim of denial of access to the courts. *See Lewis*, 518 U.S. at 351-52.

In addition, Hawkins' allegation that Bittlinger failed to deliver Barber's requests for court-appointed counsel likewise fails to demonstrate "actual injury" as a litigant. Barber received court-appointed counsel in his criminal case. Therefore, he did not suffer any injury as a litigant in his criminal case. *See Reed v. Dallas County Sheriff's Dep't*, No. 3:03-cv-2166-R, 2004 U.S. Dist. LEXIS 22474, at *9-10 (N.D. Tex. Sept. 28, 2004) (recommending dismissal of pretrial detainee's First Amendment claim for failure to show actual injury since detainee was represented by counsel in his criminal case). Barber had access to counsel and therefore cannot establish a claim for violation of his First Amendment right to access the courts.

Accordingly, Defendants Montague County and Bittlinger's Motion to Dismiss with respect to Hawkins' § 1983 claim based on a violation of Barber's First Amendment right is **GRANTED.**

4.      Eighth Amendment Claim

Defendant Dr. McCaig moves to dismiss Hawkins' claim for cruel and unusual punishment under the Eighth Amendment, arguing that Hawkins has failed to show that Dr. McCaig was deliberately indifferent to Barber's serious medical needs. Hawkins' response states that Dr. McCaig's arguments under the Eighth Amendment are not relevant since Barber's rights as a pretrial detainee flow from the Fourteenth Amendment.

A pretrial detainee's claims for denial of medical care are based in the Fourteenth Amendment. *See Wagner v. Bay City,* 227 F.3d 316, 324 (5th Cir. 2000) (pretrial detainee's denial of medical care claims flow from the procedural and substantive due process clause of the Fourteenth Amendment).

Hawkins does not assert any claims under the Eighth Amendment. *See* Pl. 2nd Am. Compl.

at ¶¶ 1-11a.  Rather, Hawkins asserts that the deprivation of Barber's right to adequate medical care "inflicted punishment upon him in violation of his clearly established right to be free from punishment under the Fourteenth Amendment."  *Id.* at ¶ 11.  Since there are no claims under the Eighth Amendment, Defendant Dr. McCaig's motion to dismiss with respect to the Eighth Amendment claim for cruel and unusual punishment is **DENIED as moot.**

### B.    State Law Claims Against Dr. Neurgaonkar & Dr. Schneider

Defendants Dr. Mark Schneider and Dr. Shrirang Neurgaonkar move to dismiss the state-law, health care liability claims brought against them for Barber's medical treatment during his two hospital visits.

Section 74.153 of the Texas Civil Practice and Remedies Code is titled "Standard of Proof in Cases Involving Emergency Medical Care" and provides:

> In a suit involving a health care liability claim against a physician or health care provider for injury to or death of a patient arising out of the provision of emergency medical care in a hospital emergency department or obstetrical unit or in a surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department, the claimant bringing the suit may prove that the treatment or lack of treatment by the physician or health care provider departed from accepted standards of medical care only if the claimant shows by a preponderance of the evidence that the physician or health care provider, with **wilful and wanton negligence**, deviated from the degree of care and skill that is reasonably expected of an ordinary prudent physician or health care provider in the same or similar circumstances.

TEX. CIV. PRAC. & REM. CODE § 74.153 (Vernon 2005) (emphasis added).

Under this statute, the plaintiff in a medical malpractice case involving emergency medical care must prove that the medical-care providers acted with "willful[8] and wanton negligence," as

---

[8] Section 74.153 uses the spelling "wilful."  Many of the cases interpreting the term use the spelling "willful."  *See Guzman v. Memorial Hermann Hosp.*, No. H-07-3973, 2009 WL 780889, at *1 (S.D. Tex. Mar. 23, 2009). Except in direct quotations, this Court uses the spelling "willful."

opposed to the traditional medical malpractice negligence standard. *Guzman,* 2009 WL 780889 at

*1. The "willful and wanton" negligence standard applies to claims "arising out of the provision of

emergency medical care." TEX. CIV. PRAC. & REM. CODE § 74.153. Thus, the standard in Section

74.153 only applies when the patient receives "emergency medical care" as defined by the statute.[9]

 *Guzman,* 2009 WL 780889 at *4.

       The standard does not apply if the emergency room physician did not perceive the situation

as an emergency or did not treat the condition as an emergency. *See id.* at *7. Similarly, the willful

and wanton negligence standard does not apply to care rendered "after the patient is stabilized and

is capable of receiving medical treatment as a nonemergency patient." *Id.* at *8. If a doctor takes

action to treat an emergency medical condition, a fact issue often arises as to whether and when the

patient was stabilized and when the willful and wanton negligence standard ceases to apply. *Id.* But

if the doctor never treats the patient as requiring emergency medical care and did not take action to

"stabilize" an emergency medical condition, then no such fact issue arises as to when the patient's

condition is stable enough to receive nonemergency care. *Id.*

       Dr. Schneider and Dr. Neurgaonkar ("Defendants") move to dismiss Hawkins' medical

---

[9] Section 74.001 of the Texas Civil Practice and Remedies Code defines "emergency medical care" as:

> [B]ona fide emergency services provided after the sudden onset of a medical or traumatic condition manifesting itself by acute symptoms of sufficient severity, including severe pain, such that the absence of immediate medical attention could reasonably be expected to result in placing the patient's health in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part. The term does not include medical care or treatment that occurs after the patient is stabilized and is capable of receiving medical treatment as a nonemergency patient or that is unrelated to the original medical emergency.

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(7).

negligence claims based on Section 74.153. Defs.' Brs., ECF No. 48, 50. Defendants claim that they provided Barber with "emergency medical care" and are therefore entitled to the "willful and wanton" standard in Section 74.153. *Id.* Defendants argue that, because Hawkins alleged ordinary negligence, she has failed to state a claim for which relief may be granted. *Id.*

Section 74.153 sets forth the standard of proof at trial. *Benish v. Grottie*, 281 S.W.3d 184, 191 (Tex. App.–Fort Worth 2009, rev. denied). The standard of proof imposed by Section 74.153 requires proof – "that is, evidence at trial that will more than likely be circumstantial – that the physician or health care provider's mental state or intent at the time of any deviation from the medical standard of care was wilful and wanton." *See* TEX. CIV. PRAC. & REM. CODE § 74.153; *Benish,* 281 S.W.3d at 191. The "willful and wanton" negligence standard does not alter the plaintiff's burden regarding the standard of care. *See Benish*, 281 S.W.3d at 192-94. Rather, it alters the plaintiff's burden of proof regarding the physician's state of mind. *Id.* Whether Section 74.153 applies in this case – that is, whether Defendants provided Barber with "emergency medical care"– involves factual determinations inappropriate for review at this time. The Court also finds that the "willful and wanton" standard impacts Hawkins' burden of proof, rather than her pleading requirements regarding the alleged standard of care.

Therefore, Defendants Dr. Schneider and Dr. Neurgaonkar's Motions to Dismiss are **DENIED.**

V.      Conclusion

For the foregoing reasons, the Court finds that Defendant Montague County and Defendant Bittlinger's Motion to Dismiss (ECF No. 14) should be and is hereby **GRANTED in part** and **DENIED in part.**

The Court finds dismissal is appropriate with respect to Plaintiff's claims under the First and

Sixth Amendment brought pursuant to 42 U.S.C. § 1983. Accordingly, these claims are hereby **DISMISSED with prejudice.**

The Court finds that official capacity claims against Defendant Bittlinger should be and are hereby **DISMISSED with prejudice** as duplicative of claims against Montague County.

The Court finds that Plaintiff has stated a claim for which relief may be granted against Defendants Montague County and Defendant Bittlinger for inadequate medical care under the Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983.

The Court finds Hawkins has stated a claim for which relief may be granted against Defendant Dr. McCaig under the Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983. Accordingly, Defendant Dr. McCaig's Motion to Dismiss (ECF No. 33) should be and is hereby **DENIED.**

The Court finds Plaintiff did not assert any claims under the Eighth Amendment. Therefore, Defendant Dr. McCaig's Motion to Dismiss (ECF No. 33) as to Plaintiff's claims under the Eighth Amendment is **DENIED as moot.**

The Court finds that Plaintiff has stated a claim for which relief may be granted against Defendants Dr. Schneider and Dr. Neurgaonkar. Therefore, Dr. Schneider's Motion to Dismiss (ECF No. 47) and Dr. Neurgaonkar's Motion to Dismiss (ECF No. 49) should be and are hereby **DENIED.**

**SO ORDERED** on this **1st** day of **November, 2010.**


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**